UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOURCE DIGITAL, INC, | Civil Action No. 1:24-cv-02377 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| MICHAEL GRECCO PRODUCTIONS, INC. | |
| Defendant. | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiff Source Digital, Inc. ("SDI" or Plaintiff"), by and through its undersigned

counsel, allege the following for its original Complaint against Michael Grecco Productions,

Inc. ("Defendant") based on personal knowledge and on information and belief as appropriate:

## INTRODUCTION

1.      Plaintiff brings this against Defendant under the Declaratory Judgment Act, 28

U.S.C. §§ 2201 and 2202, seeking a declaratory judgment that Defendant did not infringe

Plaintiff's copyright under the Copyright Act, 17 U.S.C. § 501 et seq.

## PARTIES

2.      Plaintiff is a New York corporation with a principal place of business located at

240 West 35th Street., Suite 405, New York, NY 10001.

3.      Upon information and belief, Defendant is a California corporation with a

principal place of business located at 3103 17th Street, Santa Monica, CA 90405.

## JURISDICTION AND VENUE

4.      Defendant's request for declaratory judgment arises under the Declaratory

Judgment Act, 28 U.S.C. §§ 2201 and 2202, and represents a controversy existing between

Plaintiff and Defendant.

5.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338(a) by virtue of this action

being a question of Federal law arising under the Copyright Act, 17 U.S.C. § 501 et seq.

6.      This Court has personal jurisdiction over Defendant because, upon information

and belief, Defendant maintains and transacts business through its office in Brooklyn, New York,

and has transacted business throughout the United States, including in New York and this

District, including by selling and/or licensing its photographs through Getty Images.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## FACTS

8.      Plaintiff Source Digital, Inc. is a small privately owned New York corporation

that services the digital platform of The Source magazine ("The Source"), the oldest and most

well-known news magazine focusing on Hip-Hop, urban culture, politics, and lifestyle since

1988.

9.      SDI services and operates a website at www.thesource.com, which publishes

content related to Hip Hop culture, arts, lifestyle, sports and community news.

10.      SDI also services and operates an Instagram account titled "@thesource."  The

purpose of this account is to celebrate and promote Hip Hop culture, and Black and Latino

culture generally, both in a historical and a contemporary context.

11.      SDI is widely responsible for helping creatives in the Hip Hop community

enhance their value.

12.      SDI does not generate revenue from posts displaying photographs that are

uploaded to its Instagram account.

13.      On February 7, 2024, SDI received an email from Michael Grecco, purporting to

be authorized to act on behalf of Michael Grecco Productions, Inc.  Mr. Grecco accused Plaintiff

of infringing the copyright in his photograph of the cast of the TV show "Martin" (the

"Photograph") (Exhibit A, attached hereto).

14.     Mr. Grecco alleged that the Photograph was used in a post on the @thesource

Instagram account dated September 12, 2020, which displays a composite image consisting of

four photographs, each one depicting the cast of a television show from the 1990s which was

cast largely with Black actors, focused on stories and issues important and relevant to the Black

community, and which were of significant cultural importance to the Black and Hip-Hop

communities when they aired (the "Post") (Exhibit B, attached hereto).

15.     The television show casts depicted in the composite image are from (i) "Martin,"

a sitcom which aired from 1992 to 1997 on the Fox network; (ii) "Living Single," a sitcom which

aired from 1993 to 1998 on Fox; (iii) "In Living Color," a sketch comedy show which aired from

1990 to 1994 on Fox, and (iv) "New York Undercover," a police drama that aired on Fox from

1994 to 1999.

16.     Mr. Grecco has only alleged infringement in connection with the portion of the

composite image in the Post that contains the image he alleges to be his photograph of the cast of

"Martin."

17.     In his February 7, 2024 email, Mr. Grecco stated that:

The use of the aforementioned material is in violation of the United States
copyright law. **Removal of this image from your website will not settle this
matter.** A retroactive licensing fee arrangement, based on the full effect and
power of the United States copyright law (including but not limited to remedies of
statutory damages, actual damages, and DMCA 1202 penalties) must be reached;
otherwise, a lawsuit will be initiated against the NorthStar Group and its owners
and chairs.

. . . .

3

> This infringement is well documented and must be properly licensed or a lawsuit is imminent. **Again, simply removing the image from your website will not settle this matter.** I would advise that you look up who I am and how rigorously I defend my intellectual property. I am making your company a one-time offer to reach out and settle this matter before a complaint gets filed in federal court.

(Exhibit C, attached hereto) (Emphasis same).

18.     Upon information and belief, Mr. Grecco is a photographer and notorious serial litigant who has filed more than 130 copyright infringement lawsuits across multiple jurisdictions.

19.     Attached to his email, Mr. Grecco provided a copyright registration document purportedly reflecting the registration of the Photograph with the U.S. Copyright Office. (Exhibit D, attached hereto)

20.     On February 29, 2024, Plaintiff advised Defendant that the accused Post had been taken down, and made an offer to settle the matter, which was rejected by Defendant by email that same day.

21.     On March 18, 2024, Defendant made a counter-offer.   On March 26, 2024, Defendant followed up on its counter-offer, asking "is your client looking to settle this, or litigate the matter?"

22.     Plaintiff responded the next day with its own counter-offer, and indicated that it was interested in reaching mutually acceptable resolution, if possible, without resorting to litigation.   Defendant responded hours later, stating "this is not a negotiation . . . it's the best and final offer, it's either a yes or no.  Please tell me whether it's a yes or you would prefer to litigate within the next 48 hours."

23.     Plaintiff thereafter filed this action under the Declaratory Judgment Act seeking a declaration that it did not infringe Defendant's copyright in the Photograph.

**THE FAIR USE DOCTRINE**

24.     Pursuant to the Copyright Act, 17 U.S.C. § 170, certain uses of copyrighted works are authorized by law as "fair use" and are thus non-infringing.

25.     In determining whether the use of a copyrighted work in any particular case is protected as fair use, the statutory factors to be considered include (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. § 107.

26.     SDI's purpose in using the Photograph was transformative.  Upon information and belief, the original purpose of the Photograph was to advertise and promote the show "Martin." Here, the Photograph is placed in a new context by celebrating the cultural and historical significance of Black-oriented television shows, including "Martin" and others, thirty years after they aired.  The current need for more diverse programming in media has sparked a significant social and cultural conversation.   Importantly, the Post consists of a composite image which presents the Photograph alongside, and in comparison with, photographs of the casts of other 1990s television shows that were of substantial cultural significance to the Black community, including "Living Single, "In Living Color" and "New York Undercover."  The composite image celebrates and contextualizes, for the contemporary audience, the significance of a moment in time in the 1990s when Black and Hip-Hop culture was depicted on mainstream American television in variety of different programs.

27.     SDI's use of the Photograph was non-commercial.  SDI did not generate revenue from the Post containing the Photograph.  Additionally, SDI acted in good faith by removing the

Post upon receipt of Defendant's claims of ownership and infringement.

28.     Even if the nature of the Photograph is found to contain some level of creativity, upon information and belief, the Photograph was published on or around 2009 (*see* Exhibit D), thus SDI's limited use of the Photograph did not compromise Defendant's right to control the first appearance of the Photograph.

29.     There is no market harm for use of this photograph of the cast of a television show that aired thirty years ago because there is no market.  Even if there were, SDI's use of the Photograph in the Post cannot be a substitute for the Photograph in the marketplace because it is a fixed portion of the entire composite image that contains three additional photographs.  No one seeking to license this Photograph would consider the image displayed in the Post to be an acceptable substitute.

30.     Thus, Plaintiff's use of the Photograph was a fair use and did not constitute an infringement of Defendant's copyright.

### FIRST CAUSE OF ACTION
### Declaratory Judgment
### (28 U.S.C. § 2201 et. seq.)

31.     Plaintiff repeats and realleges the statements as set forth in the preceding paragraphs as if set forth in full herein.

32.     The Declaratory Judgment Act grants this Court the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

33.     A real and justiciable controversy exists between Plaintiff and Defendant regarding Defendant's allegations that Plaintiff has infringed the copyright in its Photograph and is liable to Plaintiff for damages.

34.     Defendant has accused Plaintiff of violation of the Copyright Act, 17 U.S.C. §

501 et. seq. and has issued threats of immediate litigation if Plaintiff does not acquiesce to

Defendant's demands.

35.     Plaintiff asserts that any use of the Photograph was made pursuant to the Fair Use

Doctrine and/or is otherwise non-infringing

36.     Plaintiff seeks a declaratory judgment from this Court which declares that

Plaintiff's use of the Photograph was a non-infringing Fair Use pursuant to 17 U.S.C. § 107.

**WHEREFORE**, Plaintiff respectfully request that the Court enter judgment in its favor,

and against the Defendant by entering a declaration that Plaintiff's use of the Photograph was a

fair use under 17 U.S.C. § 107 and did not infringe Defendant's copyright, awarding reasonable

attorney's fees and costs to Plaintiff; and awarding any other such relief as the Court deems just

and appropriate.

Dated: New York, New York
        March 28, 2024

                                    Respectfully submitted,


                                    By:  /s/ Matthew F. Abbott
                                        Matthew F. Abbott
                                        **THE MCMILLAN FIRM**
                                        240 West 35th Street, Suite 405
                                        New York, NY 10001
                                        (646) 559-8314
                                        matthew@thenorthstargroup.biz

                                        *Attorneys for Plaintiff Source Digital, Inc.*

7