IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOURCE DIGITAL, INC., | : No. 1:24-cv-02377-JAV |
| Plaintiff/Counter-Defendant, | : |
| -against- | : |
| MICHAEL GRECCO PRODUCTIONS, INC. | : |
| Defendant/Counter-Claimant | : |

TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Rule 56.1 of the Local Civil Rules of the Southern District of New York, Plaintiff/Counter-Defendant Source Digital, Inc. ("SDI") respectfully submits this Counter-Statement of Material Facts in opposition to Defendant/Counter-Claimant's Motion for Summary Judgment and requests that the motion be denied.

| Plaintiff's Undisputed Facts | Opposing Party's Response and Basis |
|---|---|
| 1. Michael Grecco ("*Grecco*") is an award-winning photographer and best-selling author recognized internationally for his high-concept imagery, mastery of lighting and powerful connections with subjects. *Declaration of Michael Grecco ("Grecco Dec.")* at ¶ 4. | Undisputed. |
| 2. Grecco's extensive body of work encompasses celebrity, fine art, advertising, fashion, portraiture and editorial photography. *Id*. | Undisputed. |
| 3. Grecco's images have appeared in publications such as *Time Magazine, Vanity Fair, Esquire, The Boston Globe, The Guardian,* and *Rolling Stone*, among many others. *Grecco Dec.*, at ¶ 5. | Undisputed. |
| 4. Grecco is the founder of The American Society for Collective Rights Licensing, a leader in the administration and distribution of collective revenue from around the world for U.S. photographers, illustrators, and rights holders of published works. He has spoken before Congress regarding artists and copyrights. *Grecco Dec.*, at ¶ 6. | Undisputed. |
| 5. Grecco is also the founder and principal of | Undisputed. |

1

| | |
|---|---|
| MGP. *Grecco Dec.*, at ¶ 1. | |
| 6. Grecco regularly seeks to register the photographs he creates with the United States Copyright Office (the "*USCO*") for copyright protection. *Grecco Dec.*, at ¶ 7. | Undisputed. |
| 7. Grecco will register his photographs either in his own name or in MGP's name. When Grecco's photographs are registered in his own name, Grecco assigns his rights in those images to MGP for marketing and other purposes. *Id.* | Disputed: Defendant's Photograph was registered to Michael Grecco Photography, Inc. (Grecco Decl., Ex. B), but has brought this lawsuit on behalf of Michael Grecco Productions, Inc. Defendant has not produced any written assignment in this matter. In Defendant's Response to SDI's Document Request No. 6, which requested assignments of the copyright in the Photograph, Defendant responded that it "is not aware of any documents responsive to this Request." (Abbott Decl., Ex. B). |
| 8. Source Digital is a New York corporation with a principal place of business at 240 West 35th Street, Suite 405, New York, NY. *Grecco Dec.*, at ¶ 14. | Undisputed. |
| 9. Source Digital owns and operates a website at www.thesource.com (the "*Website*"). *Grecco Dec.*, at ¶ 15. | Undisputed. |
| 10. Source Digital holds its Website out as being "the oldest and most well-known news magazine focusing on Hip-Hop, urban culture, politics, and lifestyle since 1988." *Id.* | Undisputed. |
| 11. Source Digital generates revenue through its business activities, primarily through its Website via paid advertisements. *Deposition of Londell McMillan ("McMillan Dep.") attached as Exhibit 2 to the declaration of Joshua D. Vera ("Vera Dec.")*, 15:20-16:2. | Disputed. Mr. McMillan did not testify that SDI generated revenue from "business activities," nor that revenue was generated "primarily" through the Website. He testified that "Source Digital generates revenue from its website through paid advertisement" and that does not generate revenue from social media. (Vera Decl., 15:18 – 16:8). |
| 12. Source Digital is also the operator of the social media account on the Instagram platform, having the name "thesource" (the "*Account*"). *McMillan Dep.*, p. 21-22. | Undisputed. |
| 13. The Account was created by Source Digital and/or its staff. *McMillan Dep.*, p. 19-20. | Undisputed. |
| 14. Source Digital uses its Account for, *inter alia*, generating website awareness and revenue. *McMillan Dep.*, p. 17:12-18. | Disputed. Mr. McMillan was referring in his testimony to the general use of social media as editorial content on the Website. Elsewhere, his testimony is clear that Account does not generate revenue. (Abbott Decl., Ex. F, 14:19-24; 21:19-21; 53:5-14). |
| 15. The Account provides a direct link to Source Digital's associated Website at www.source.com. *See Source Digital Response to Request for Admission No. 19 attached as Exhibit 1 to the declaration of Joshua D. Vera*. | Disputed. Reference to "Account" is vague and ambiguous. The cited RFA response states that there are no links to the website from the Post pages on the @thesource Instagram account., and that a single link is found on the main "Profile page" for the account. (Vera Decl., Ex, 1, Response No. 19) |
| 16. Source Digital's staff follow its policies and procedures (*McMillan Dep.*, p. 24-25) when posting on the Account which direct its staff to use images in | Disputed. Mischaracterizes Mr. McMillan's testimony, which states that SDI's staff are expected to utilize images in posts on the Account because Instagram is an image and video-based platform. (Vera Decl., Ex. 2 at 26:20-24). |

2

| | |
|---|---|
| the content appearing on the Account (*McMillan Dep.*, 26:20-24). | |
| 17.     In 2009, Grecco published a photograph featuring the cast of the television show "Martin" (the "*Photograph*"). *Grecco Dec.*, at ¶ 8; see also Dkt. No. 24-1. | <u>Undisputed.</u> |
| 18.  Grecco selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the Photograph including the positioning of the actors, backdrop, and studio settings. *Grecco Dec.*, at ¶ 9. | <u>Undisputed.</u> |
| 19. The Photograph was created with the intention of it being used commercially and for the purpose of display and/or public distribution. *Grecco Dec.*, at ¶ 10. | <u>Disputed</u>. The Photograph was created to be used in connection with the then-current television production of "Martin." (D.E. 42-1). |
| 20. The Photograph was registered by the USCO on July 7, 2010, under Registration No. VA 1-431-698. *Grecco Dec.*, at ¶ 12. | <u>Undisputed.</u> |
| 21. MGP acquired all rights in and to the Photograph by way of written assignment. *Grecco Dec.*, at ¶ 11. | <u>Disputed</u>: Defendant's Photograph was registered to Michael Grecco Photography, Inc. (Grecco Decl., Ex. B), but has brought this lawsuit on behalf of Michael Grecco Productions, Inc. Defendant has not produced any written assignment in this matter. In Defendant's Response to SDI's Document Request No. 6, which requested assignments of the copyright in the Photograph, Defendant responded that it "is not aware of any documents responsive to this Request." If Defendant is not aware of any written assignments, it is unclear how he is able to simultaneously state that he acquired the rights to the Photograph "by way of written assignment."(Abbott Decl., Ex. B). |
| 22.  Defendant, via its contributor and then employee, Terrence "Terry" Hamilton ("*Hamilton*"), copied and displayed the Photograph on the Account in a post dated September 12, 2020, at the following URL: http://instagram.com/p/CFC80uWMJch (the "*Infringement*"). *Grecco Dec.*, at ¶ 18; *McMillan Dep.*, p. 37, 9-14; *McMillan Dep.*, p. 41. | <u>Disputed</u> as to the characterization of use as "infringement." Attorney argument is not evidence.<br><br><u>Disputed</u>.  At all relevant times, Terrence Hamilton was an independent contractor. As indicated in the cited testimony, he was a former employee of a separate company that published the Source print magazine.  (Vera Decl., Ex. B, at 41:24 – 42:5). |
| 23.  The Infringement features MGP's Photograph as one of a collection of four photographs, each depicting the cast of television shows with primarily Black actors, including "Martin," "Living Single," "In Living Color," and "New York Undercover." *Grecco Dec.*, at ¶ 20. | <u>Disputed</u> as to the characterization of uses as "infringement." Attorney argument is not evidence.<br><br><u>Disputed</u>.  The post contains a single composite image created for the Account by combining smaller portions of four photographs. |
| 24.  A side-by-side comparison of MGP's original Photograph and the Infringement as displayed on Source Digital's Account shows that Source Digital's Infringement is an exact copy of MGP's original Photograph. *Grecco Dec.* at ¶ 19. | <u>Disputed</u> as to the characterization of uses as "infringement." Attorney argument is not evidence.<br><br><u>Disputed</u>:  Comparison of Grecco Decl., Ex. A and Grecco Decl., Ex. B shows that the entire original Photograph was not used in the Post |

| | |
|---|---|
| 25. The Infringement is bordered with a comment consisting solely of four words, *to wit*: "Remember these '90s classics?" *Grecco Dec.*, at ¶ 22; *Dkt. Nos.* 8-2; 24-2. | <u>Disputed</u> as to the characterization of uses as "infringement." Attorney argument is not evidence.<br><br><u>Disputed</u>: Mischaracterizes the post, which is also bordered by several hashtags, including #martin, #livingsingle, #newyorkundercover, #inlivingcolor, #tv, #classics, #respecttheculture, #sourceclassics, as well as numerous comments left by viewers. |
| 26. Neither Grecco nor MGP granted Source Digital, Hamilton or any other person associated with Source Digital permission to use the Photograph. *Grecco Dec.* at ¶ 20. | <u>Undisputed</u>. |
| 27. Hamilton creates, curates, and posts content on the Account on behalf of Source Digital (*McMillan Dep*. 41:8-42:15) and is one of a select group of people who were able to post content on the Account in 2020 (see *McMillan Dep*., 22:12-24:9). | <u>Undisputed</u>. |
| 28. Mr. McMillan and Hamilton speak several times per week regarding the posts Hamilton creates for Source Digital (*McMillan Dep*. 42:20-23) and Hamilton is provided guidance on the content Hamilton creates for the Account (*McMillan Dep*.43:6-8). | <u>Undisputed</u>. |
| 29. Hamilton is further provided with access to Source Digital's resources and licensed content for the material created for the Account. *McMillan Dep*., 45:3-11. | <u>Undisputed</u>. |
| 30. In 2024, MGP became aware that its Photograph was being displayed on Source Digital's Account. *Grecco Dec.* at ¶ 17. | <u>Undisputed</u>. |
| 31. In the interest of avoiding litigation, Grecco contacted Source Digital directly regarding this matter in February 2024, advising Source Digital of MGP's discovery of its unauthorized use of MGP's Photograph. *Grecco Dec.* at ¶ 21. | <u>Disputed</u>. Defendant did not wish to avoid litigation. In fact, he repeatedly threatened it as a certainty if his demands were not fully complied with:<br><br>"I would advise that you look up who I am and how rigorously I defend my intellectual property. I am making your company a one-time offer to reach out and settle this matter before a complaint gets filed in federal court. (D.E. 8-3)"<br><br>"this is not a negotiation . . . it's the best and final offer, it's either a yes or no. Please tell me whether it's a yes or you would prefer to litigate within the next 48 hours." (D.E. 8, ¶ 22). |
| 32. Grecco's email asked Source Digital to provide any license it had that MGP may not know about or, otherwise, invited Source Digital to enter into a retroactive licensing agreement. *Id.* | <u>Disputed</u>: Grecco's email did not "invite" SDI to enter into a license. It demanded that an overbroad fee arrangement "based on the full effect and power of the United States copyright law (including but not limited to remedies of statutory damages, actual damages, and DMCA 1202 penalties) must be reached" or else "a lawsuit will be initiated against the Northstar Group and its owners and chairs." (D.E. 8-3). |
| 33. Despite Grecco's efforts to bring this | <u>Disputed</u>: Mischaracterizes Grecco's efforts, which were – as set |

4

| | |
|---|---|
| matter to a resolution, Source Digital commenced this action against MGP on March 28, 2024. *Dkt. No. 8*. | forth in response to Nos. 31 and 32 above - centered on browbeating SDI into accepting an exorbitant demand by threatening imminent litigation, including based on DMCA 1202 claims which were never actually filed against SDI. |

## SDI'S ADDITIONAL MATERIAL FACTS

| Opposing Party's Additional Material Facts | Supporting Evidence |
|---|---|
| 34.    SDI is a small privately owned New York corporation formed in 2014 that services the digital platform affiliated with The Source magazine ("The Source"), a long-running publication providing news, commentary and criticism on hip-hop music, Black culture, politics, and lifestyle, founded in 1988. | McMillan Decl. ¶ 4 |
| 35. SDI's website at www.thesource.com (the "Website"), which publishes current news and commentary related to hip hop culture, as well as arts, music, politics, sports, and other issues relevant to the Black community. | McMillan Decl. ¶ 5 |
| 36. As a media organization focusing on issues vital to the Black community, SDI's mission is not only to focus on the current trends and "breaking news" that are published on its Website, but also, through the Account, to provide the public with education and historical context as to past important cultural events, as well as forums for further discussion. | McMillan Decl. ¶ 13 |
| 37.Through SDI's Instagram account titled "@thesource" ("the "Account"), SDI SDI creates, curates, and provides commentary on images and other content of cultural relevance, both in a contemporary and historical context, in order to celebrate, preserve and educate as to the cultural and historical legacy of hip hop and Black popular culture, to raise awareness and to maintain its relevance. | McMillan Decl. ¶ 11 |
| 38. A long-running feature on the Source Instagram account involves publishing of content celebrating and educating as to as to events and individuals of historical and cultural significance to the Black community. For example, the Account features posts that celebrate the historical release dates of seminal hip hop albums, films and television of cultural importance, and past events such as the 1969 Harlem Cultural Festival. | McMillan Decl. ¶ 14, 15 |
| 39. SDI is one of very few media organizations that offers news, entertainment and sports content relevant and targeted to the Black community. | McMillan Decl. ¶ 16 |
| 40. SDI is one of very few organizations that creates and publishes content aimed at promoting and educating as to historical milestones in Black culture, | McMillan Decl. ¶ 17 |

| | |
|---|---|
| which risk being forgotten in contemporary media and as a result of the current administration's efforts to delete Black cultural achievement from the public record. | |
| 41. SDI does not generate any revenue from contributor posts on its Instagram account, and did not generate any revenue from the post containing the allegedly infringed photograph in this case. | McMillan Decl. ¶ 19 |
| 42. SDI does not run advertisements on photographic posts on the @thesource Instagram account and does not generate revenue from such posts. | McMillan Decl. ¶ 20 |
| 43. SDI has not set up nor managed the Account as a revenue-generating platform because it views the Account primarily as a preservation platform, to preserve the cultural significance and legacy of hip hop and Black culture. | McMillan Decl. ¶ 21; Abbott Decl. Ex. F at 53:5 - 14 |
| 44. SDI engages a separate team of contributors to create and publish content on the Account, as its purpose and mission are separate and distinct from the Website. | McMillan Decl. ¶ 18 |
| 45. The @thesource Instagram contains a single small, unobtrusive link to the source.com website on its profile page.  A viewer who accessed an @thesource Post in their Instagram feed would be taken directly to that Post page – not to the profile page – and would not see this link. | McMillan Decl. ¶ 22 |
| 46. The posts displayed on the Account do not contain any direct link to the Website. | McMillan Decl. ¶ 23 |
| 47. SDI uses hashtags to identify and organize Instagram posts, and to illustrate the cultural and historical significance of their contents by associating them with content of similar cultural and historical significance. | McMillan Decl. ¶ 24 |
| 48. For example, SDI requests that when the contributors post content of cultural significance to the Black community, they use the hashtag *#culture* or *#respecttheculture*. | McMillan Decl. ¶ 25 |
| 49. The hashtags *#culture* and *#respecttheculture* represents SDI's view that the Black community should be aware of and appreciate the cultural events that have shaped it, past and present.  The use of the hashtag and use of the phrase "respect the culture" generally, is understood as identifying those cultural events that demand acknowledgment and respect. | McMillan Decl. ¶ 26 |
| 50. *#respecttheculture* is also well understood as a rallying call for acknowledgment and appreciation of items of significance to Black culture and reinforces the significance of the contents of the posts. | McMillan Decl. ¶ 27 |
| 51. SDI seeks to engage with hip hop music and culture not merely in regard to current events, but by celebrating and promoting the entire history of the | McMillan Decl. ¶ 28 |

6

| | |
|---|---|
| culture and its connection and relevance to disadvantaged communities.  Contributors are encouraged to create posts that illustrate the significance of historically significant content in order to bring it into a new, contemporary context to inspire and inform the audience. | |
| 52. The post identified in Defendant's February 7, 2024 cease and desist letter was removed from display on the @thesource Instagram account as of February 17, 2024, in response to Plaintiff's demand in the letter. | Abbott Decl. ¶ 4 |
| 53. The show Living Single "provided much needed representation for African American audiences" and "at a time when diversity in television was sorely lacking." | Abbott Decl. Ex. D |
| 54. The show "New York Undercover" was one of the first police dramas in the U.S. to feature actors of color in the lead roles. | Abbott Decl., Ex. C |
| 55. SDI engages independent contractors to create and publish content on its Website and Account as contributors.  They work remotely, provide their own work materials, control their schedules and manner in which their content is created, including by choosing topics and sources.  They do not receive benefits, nor are taxes withheld from their paychecks. | McMillan Decl. ¶ 7 |
| 56. All of SDI's contributors are independent contractors. | McMillan Decl. ¶ 8 |
| 57. It is SDI's general practice and policy to publish only material that is available for public use, covered by a valid license, or owned by SDI. | McMillan Decl. ¶ 9 |
| 58. Every independent contractor engaged by SDI is advised of SDI's copyright policies and instructed to publish content accordingly.  SDI does not give posting privileges until contributors have demonstrated that they understand and can abide by these guidelines | McMillan Decl. ¶ 10 |
| 59. Defendant does not possess any licenses entered into with third parties in connection with the Photograph | Abbott Decl., Ex. B, Response Nos. 15,16 |
| 60. Defendant does not possess any documents that "evidence, refer to or discuss any damages or harm . . . that [it] claim[s] to have suffered, or that [it] will be likely to suffer, as a result of the claims set forth in [its] Complaint. | Abbott Decl., Ex. B, Response No. 18 |

Dated: June 23, 2025

Respectfully submitted,

By: /s/ Matthew Abbott
THE MCMILLAN FIRM
240 W. 35th Street, Suite 405
New York, NY 10001
Tel: (646) 559-8314
matthew@thenorthstargroup.biz

*Attorneys for Plaintiff/Counter-Defendant Source Digital, Inc.*