UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
SOURCE DIGITAL, INC.,                                             :
                                                                  :
                    Plaintiff/Counter-Defendant,    :        24-CV-02377 (JAV)
                                                                  :
           -v-                                                    :        OPINION AND ORDER
                                                                  :
MICHAEL GRECCO PRODUCTIONS, INC.,               :
                                                                  :
                    Defendant/Counterclaimant.      :
                                                                  :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

     In 2020, Source Digital, Inc. ("Source Digital") published on its Instagram

account a post that included a photograph in which Michael Grecco Productions,

Inc. ("MGP") holds a registered copyright.  Source Digital filed this action seeking a

declaratory judgment that it had not infringed MGP's copyright.  ECF No. 8.  MGP

brought counterclaims for copyright infringement against Source Digital.  ECF No.

24 at ¶¶ 37-101.  Presently before the Court is MGP's motion for summary

judgment as to liability on its copyright infringement counterclaims and seeking the

dismissal of Source Digital's declaratory judgment action.  ECF No. 41.  For the

reasons set forth below, MGP's motion for summary judgment is GRANTED.

## BACKGROUND

     For purposes of this summary judgment motion, the facts are largely

undisputed.  *See* ECF Nos. 44 ("MGP 56.1 Statement"), 48 ("Source Digital 56.1

Counterstatement").

     Michael Grecco ("Grecco"), a photographer and author, is the founder and

principal of MGP.  *See* ECF No. 42 ("Grecco Decl."), ¶¶ 1, 4.  His images have appeared in publications such as Time Magazine, Vanity Fair, Esquire, The Boston Globe, Rolling Stone, and the Guardian.  *Id.*, ¶ 5.  Grecco regularly assigns the rights to his photographs to MGP, which is responsible for licensing the works to interested third parties.  *Id.*, ¶ 13.

In 2009, Grecco took a photograph depicting the cast of the television show *Martin* (the "Photograph").  *Id.*, ¶ 8.  In creating the Photograph, Grecco selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image. He also made the determinations regarding the positioning of the actors, backdrop, and studio settings.  *Id.*, ¶ 9.



*Id.*, Ex. 1.

Grecco assigned all his rights in the Photograph to MGP. *Id.*, ¶ 11. The Photograph was registered by the U.S. Copyright Office ("USCO") under Registration No. VA 1-431-698 on July 7, 2010. *See id.*, Ex. 2.

The Source is a long-running magazine that provides "news, commentary[,] and criticism on hip-hop music, Black culture, politics, and lifestyle." ECF No. 49 ("McMillan Decl."), ¶ 4. Source Digital is a privately owned New York corporation formed in 2014 that services the digital platform associated with The Source magazine, at www.thesource.com (the "Website"). *Id.*, ¶¶ 4-5. The Website publishes "current news and commentary related to hip hop culture, as well as arts, music, politics, sports, and other issues relevant to the Black community." *Id.*, ¶ 5.

Source Digital also operates an associated Instagram account, @thesource (the "Instagram Account"). *Id.*, ¶ 6. SDI engages independent contractors to publish content on the Website and the Instagram Account. *Id.*, ¶ 7. A long-running feature on the Instagram Account involves publishing content celebrating historical milestones in Black culture, such as posts that commemorate the release dates of seminal albums, films, or television shows of cultural importance. *Id.*, ¶¶ 14-15.

On or about September 12, 2020, the Instagram Account posted four photographs, displayed in a grid, each depicting the cast of a television show (the "Post"). Grecco Decl., ¶¶ 20, 22. The Post included the unaltered Photograph in the top left corner of the grid. *Id.*, Ex. 3. The Post was captioned: "Remember these '90s classics? #martin #livingsingle #newyorkundercover #inlivingcolor #tv #classics

3

#respecttheculture #sourceclassics." *Id.*



*Id.* Neither Grecco nor MGP granted Source Digital a license to use the

Photograph. Grecco Decl., ¶ 23.

Grecco became aware of the post in 2024, and in February 2024 contacted

Source Digital to advise them of the unauthorized use of the Photograph and

request that they enter into a retroactive licensing agreement. *Id.*, ¶ 24. Plaintiff

took down the Post after receiving this notification, ECF No. 50, ¶ 4, and the parties

engaged in settlement negotiations, ECF No. 8, Ex. C. After those negotiations

broke down, Source Digital commenced this action.

### LEGAL STANDARD

A grant of summary judgment is proper when "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  If a reasonable jury could render a verdict in favor of the nonmoving party, a genuine dispute of material fact exists.  *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (citation omitted).  The moving party has the burden of demonstrating the absence of a question of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In forming this assessment, the Court must view all facts "in the light most favorable" to the non-moving party.  *See Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002).

## DISCUSSION

A copyright owner has "the exclusive right[s] to—or to license others to—reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (quoting 17 U.S.C. § 106).  To succeed on a claim for copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted).

Fair use is an affirmative defense to a claim of copyright infringement.  *See Romanova v. Amilus Inc.*, 138 F.4th 104, 110 (2d Cir. 2025).  Specifically, the Copyright Act provides that "the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching

5

(including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. "Although the issue of fair use is a mixed question of law and fact, the court may resolve issues of fair use at the summary judgment stage where there are no genuine issues of material fact as to such issues." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006) (citation omitted).

In opposing MGP's motion for summary judgment, Source Digital does not dispute that the elements for copyright infringement have been met. *See generally* ECF No. 47 ("Opp'n"). "A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *Ferdman v. CBS Interactive Inc.*, 342 F.Supp.3d 515, 524 (S.D.N.Y. 2018) (cleaned up). And Source Digital does not dispute that the Post contains a copy of the Photograph.

Source Digital argues, however, that the Post is protected under the fair use doctrine. Opp'n at 1, 5-16. To evaluate whether a particular use qualifies as fair use, courts must engage in "an open-ended and context-sensitive inquiry" that focuses on four non-exclusive factors: (1) the purpose and character of the use, (2) the nature of the work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of copyrighted work. *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 579 (S.D.N.Y. 2020) (cleaned up); *see also* 17 U.S.C. § 107.

Applying those factors here, the Court concludes that there are no genuine

disputes as to any material fact, and the fair use defense fails as a matter of law. Accordingly, MGP is entitled to summary judgment as to liability on its copyright infringement claim.

## A.  The Purpose and Character of the Use

The first of the fair use factors looks to whether the copy merely "supersedes the objects of the original . . . or instead adds something new, with a further purpose or different character." *Romanova*, 138 F.4th at 110 (cleaned up).  "The use of an original work to achieve a purpose that is the same as, or highly similar to, that of the original work is more likely to substitute for, or supplant, the work." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) (cleaned up).  In contrast, if the work "communicates something new and different from the original or otherwise expands its utility," the use is transformative.  *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 176 (2d Cir. 2018) (cleaned up). "The purposes listed in the preamble to § 107, including criticism, comment, news reporting, and teaching, are the sort of copying that Congress and the courts 'have most commonly found to be fair uses and so may guide the first factor inquiry.'" *Shihab v. Source Digital, Inc.*, No. 23-CV-7266 (DLC), 2024 WL 3461351, at *4 (S.D.N.Y. July 18, 2024) (quoting *Andy Warhol*, 598 U.S at 528).  Whether a use is transformative is an objective inquiry.  *Andy Warhol*, 598 U.S. at 545.

In applying this test, courts must focus on "whether *the copying of the original* communicates a message that differs from the message of the original—not whether the copier separately declares such a message." *Romanova*, 138 F.4th at

118-19.  In other words, the fact that the copier is using the copied image to convey a different meaning than the original is not necessarily "transformative" within the meaning of the fair use doctrine.  "A taking from another author's work for the purpose of making points that have no bearing on the original may well be fair use, but the taker would need to show a justification."  *Id.* at 112.  A use is justified where "copying is reasonably necessary to achieve the user's new purpose."  *Andy Warhol*, 598 U.S. at 532.  For example, parody "needs to mimic an original to make its point," *id.* (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580-81 (1994)), while "commentary or criticism that targets an original work may have compelling reason to conjure up the original by borrowing from it," *id.* (cleaned up).  "An independent justification like this is particularly relevant to assessing fair use where an original work and copying use share the same or highly similar purposes, or where wide dissemination of a secondary work would otherwise run the risk of substitution for the original or licensed derivatives of it."  *Id.*

Other justifications for copying can also fall within the fair use doctrine where "the copying provided information to the public about the copied work, or enabled the furnishing of valuable information on any subject of public interest, or rendered a valuable service to the public, in most cases limited to circumstances in which the benefit was provided without allowing public access to the copy, thus assuring that the copied work not serve as a substitute for the original in the marketplace."  *Romanova*, 138 F.4th at 115.

This first factor weighs strongly against fair use in the instant case.  The

Photograph as it appears in the Post is completely unaltered.  No legitimate justification is offered for the copying of the Photograph.  The Post does not comment on the Photograph, provide criticism of the Photograph, parody the Photograph, or provide news reporting on the Photograph.  Nor is this a circumstance in which valuable information is being conveyed to the public about a work that is not otherwise accessible to the public.  Rather, the Photograph is used for illustrative purposes, to depict the cast of the television program *Martin*.

Source Digital argues that the Post had a different purpose than the Photograph.  When taken, the Photograph served as a promotional shot for a television show that was airing on television.  Opp'n at 7.  The Post, in contrast, groups the Photograph with three other cast photos, in a composite picture.  *Id.* at 8.  It thereby presents the image in a new context, which "evokes the historical and cultural significance of these four shows that each featured predominantly Black characters . . . and provided Black representation in television, where it had been lacking."  *Id.* at 9.

The fact that the Post as a whole communicated a different message than the original Photograph does not render it transformative, however.  "A secondary author is not necessarily at liberty to make wholesale takings of the original author's expression merely because of how well the original author's expression would convey the secondary author's different message."  *Romanova*, 138 F.4th at 112; *see also Barcroft Media, Ltd. v. Coed Media Group, LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (using a copyrighted work as an "illustrative aid[]"is not

9

transformative).  The facts of *Romanova* illustrate this point.  In *Romanova*, the defendant had used copyrighted photographs of a woman posing with her two snakes to illustrate an article commenting on the growing trend of online pet photography.  138 F.4th at 107-08.  The district court had found that the article communicated a different message than the original photographs, and thus the fair use defense protected the republication.  *Id.* at 110.  The Second Circuit reversed, explaining that the district court had misapplied the first factor of the fair use doctrine.  *Id.* at 118-19.  The Second Circuit emphasized that the relevant question is whether the copying conveys a new message, not the text accompanying the article.  *Id.*  The Second Circuit further held that the district court additionally erred by not considering whether there was an adequate justification for the copying.  *Id.*

Plaintiff's use of the Photograph to illustrate the cast of the television show *Martin* in a post concerning 1990s television shows is substantially similar to the purpose of the original Photograph.  The mere addition of some "token commentary" to the Photograph does not transform the copyrighted work.  *McGucken v Newsweek LLC*, 464 F. Supp. 3d 594, 606 (S.D.N.Y. 2020); *see also Romanova*, 138 F.4t at 119 ("Little would remain of an author's copyright protection if others could secure the right to copy and distribute a work simply by asserting some fact about the copied work.").  Indeed, other courts in this District have concluded, in cases concerning Source Digital, that "adding hashtags to the post, for instance, #sourceclassics or #culture, does not transform the image or create a transformative use."  *Shihab*,

10

2024 WL 3461351, at *5; *accord Nixon v. Source Digital, Inc.*, No. 23-CV-5218 (JPC), 2024 WL 5202514, at *6 (S.D.N.Y. Dec. 23, 2024).

Although transformative use is the "primary inquiry," courts also consider whether the use was for a commercial purpose and whether the use was in bad faith. *Ferdman*, 342 F. Supp. 3d at 531. But these subfactors do not substantially alter this Court's determination that this prong favors MGP. There is no indication of bad faith, as Defendant's failure to seek permission for copying does not itself amount to bad faith. *See Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006) (citations omitted). But "while the good or bad faith of a defendant generally should be considered, it generally contributes little to fair use analysis." *Ferdman*, 342 F. Supp. 3d at 531 (citation omitted); *see also Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021) ("As for bad faith, our decision in *Campbell* expressed some skepticism about whether bad faith has any role in a fair use analysis.").

The parties dispute whether the use was commercial in nature. *See* Source Digital 56.1 Counterstatement, ¶¶ 11, 14, 15. "[A] finding that copying was not commercial in nature tips the scales in favor of fair use." *Google*, 593 U.S. at 32. But while the non-commercial nature of the use is "relevant" it is "not dispositive." *Andy Warhol*, 598 U.S. at 531. Rather, it should be "weighed against the degree to which the use has a further purpose or different character." *Id.*

Drawing all reasonable inferences in favor of the nonmoving party, and assuming Source Digital did not use the image for a commercial purpose, the first factor nonetheless weighs in favor of MGP because the Court finds that the

11

republication of the Photograph does not have a different purpose or different character than the original.

## B.  The Nature of the Copyrighted Work

Under the second factor, "courts consider (i) whether the work is expressive or creative, with greater leeway being allowed to a claim of fair use where the work is factual or informational; and (ii) whether the work is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower." *Hachette Book Group, Inc. v. Internet Archive*, 115 F.4th 163, 187 (2d Cir. 2024) (cleaned up).  This factor, however, "rarely play[s] a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015) (citation omitted).

The Photograph reflects the creative choices of Michael Grecco, including the positioning of the actors and the setting used.  Accordingly, although the Photograph was already published (a fact which favors Source Digital), overall this factor slightly favors MGP.  *Hachette*, 115 F.4th at 187.

## C.  The Amount and Substantiality of the Portion Used

The third factor compares the portion of the use with the copyrighted work as a whole to determine if it is "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586.  Courts consider "not only the quantity of the materials taken but also 'their quality and importance' to the original work." *Walsh*, 464 F. Supp. 3d at 585 (citation omitted).  The crux of the inquiry is whether "no more was taken than necessary." *Authors Guild, Inc. v. HathiTrust,* 755 F.3d 87, 98 (2d Cir.

12

2014) (citation omitted).

"While courts have rejected any categorical rule that a copying of the entirety cannot be a fair use, a finding of fair use is less likely . . . when the copying is extensive, or encompasses the most important parts of the original." *Fox News Network*, 883 F.3d at 179 (cleaned up).  Courts must consider whether the quantity of the material used was reasonable "in relation to the purpose of the copying." *Kelley v. Morning Bee, Inc.*, 21-CV-8420 (GHW), 2023 WL 6276690, at *13 (S.D.N.Y. Sep. 26, 2023).  "Sometimes it is necessary to copy the entirety of a work in order to achieve a legitimate, transformative secondary purpose." *Hachette*, 115 F.4th at 188.  Yet where there is no transformative purpose, copying even a small portion of the work may constitute an unfair use. *Id.*

Since Defendant's use was not transformative, it follows that its use of the entire Photograph was not necessary. *See Lynk Media, LLC v. Ind. Digital News and Media, LLC*, 24 CIV. 583 (JPC), 2025 WL 2771625, at *19 (S.D.N.Y. Sep. 29, 2025).  That said, this factor "weighs less when considering a photograph—where all or most of the work often must be used in order to preserve any meaning at all— than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value." *Ferdman*, 342 F. Supp. 3d at 539.  Accordingly, the Court weighs this factor in favor of MGP, but again only slightly.

## D.  The Effect of the Use on the Market

The fourth and final fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  This factor

13

focuses on "whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015).  "Analysis of this factor requires courts to balance the benefit the public will derive if the use is permitted against the personal gain the copyright owner will receive if the use is denied." *Hachette*, 115 F.4th at 189 (cleaned up). This is "undoubtedly the single most important element of fair use." *Id.* (citation omitted).

When analyzing the effect of the infringing use on the market for a copyrighted work, courts ask "whether, if the challenged use becomes widespread, it will adversely affect the potential market for" the work.  *Bill Graham Archives*, 448 F.3d at 613 (citation omitted).  The inquiry is "not whether the second work would *damage* the market for the first (by, for example, devaluing it through parody or criticism), but whether it *usurps* the market for the first by offering a competing substitute." *Hachette*, 115 F.4th at 189.  "For example, it is widely accepted that 'a copyright holder is entitled to demand a royalty for licensing others to use its copyrighted work, and that the impact on potential licensing revenues is a proper subject for consideration in assessing the fourth factor.'" *Nixon*, 2024 WL 5202514, at *8 (quoting *Fox News Network*, 883 F.3d at 180).  The relevant and traditional market here would thus include the licensing of photographs to media outlets.  *See, e.g.*, *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 198 (S.D.N.Y. 2021).

The fourth factor weighs against fair use.  There is a presumption of market harm when the use of the work is not transformative.  *See Ferdman*, 342 F. Supp. 3d at 541 (citation omitted).  This is because "the more copying is done to achieve a purpose that is the same as or substantially similar to the original, the more likely it is that the copy will serve as a satisfactory substitute for the original."  *Hachette*, 115 F.4th at 189 (cleaned up).

Source Digital attempts to rebut this presumption by pointing to undisputed evidence that MGP has never licensed the Photograph and has not lost any business as a result of the publication of the Photograph.  Source Digital 56.1 Counterstatement, ¶¶ 59-60.  According to Source Digital, there was no usurpation of the market, because there was no market to usurp.  Opp'n at 15-16.

Courts have consistently rejected similar arguments.  *See, e.g.*, *Ferdman*, 342 F. Supp. 3d at 541-42.  The market effects factor "requires consideration of not only the market harm caused by the particular actions of the alleged infringer, but also the market harm that would result from unrestricted and widespread conduct of the same sort."  *Id.* at 541 (cleaned up).  A media outlet's unlicensed use of a copyrighted photograph deprives professional photographers of the only potential market for their works.  *Id.*; *see also Shihab*, 2024 WL 3461351, at *7 (the "widespread copying of the works of professional photographers without licensing their works would damage an entire profession").  There would be no need for media outlets to license photographs if each outlet could appropriate a copyrighted work without prior authorization from the copyright owner.  *Nixon*, 2024 WL 5202514, at

*9. Additionally, the fact that Source Digital published the Photograph on its Instagram account indicates that "there is a plausibly exploitable market for photographers to license photographs to organizations like [Source Digital] for use on its online platforms." *Id*. Accordingly, this factor weighs in favor of MGP.

## E. Weighing the Factors

Finally, the Court "weigh[s] the four statutory factors together, along with any other relevant considerations, in light of the purposes of copyright." *Fox News Network*, 883 F.3d at 180 (cleaned up). Even assuming for purposes of this summary judgment motion that the Instagram Post was non-commercial in nature, the relevant factors still overwhelmingly favor MGP. The Photograph reflected Grecco's creative choices. It was copied by Source Digital in its entirety for a non-transformative purpose. Source Digital's "copying usurped the market for the Subject Photographs in a manner that, if it were to become widespread, would do significant damage to the rights of professional photographers." *Nixon*, 2024 WL 5202514, at *10.

Source Digital argues that "[p]roviding content that acknowledges and educates regarding the cultural achievements of a racial group that has been historically marginalized and oppressed in this country provides a benefit, not only to members of that group, but to the public generally." Opp'n at 15. It is doubtful that the Post in question, which compiled four existing photographs with a four-word caption, serves the proclaimed educational purpose. And the public could easily have been educated as to this era of television programming without the

16

appropriation of MGP's copyrighted work.  Even assuming there is a public benefit

from Source Digital's copying of the Photograph, however, it is not sufficient to

offset the injury to MGP's rights.

Accordingly, taking all relevant factors into consideration, the Court holds

that Source Digital's fair use defense fails as a matter of law on the record

presented.

## CONCLUSION

For the reasons stated herein, MGP's motion for summary judgment is

GRANTED.  The parties are directed to meet and confer regarding next steps in

light of the Court's decision and to submit a joint letter presenting their position as

to how to proceed within two weeks of the date of this Opinion and Order.

The Clerk of Court is directed to terminate ECF No. 41.

SO ORDERED.

Dated:  March 31, 2026                      _____
        New York, New York                        JEANNETTE A. VARGAS
                                                   United States District Judge